UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NICOLA MESSERE,

          Plaintiff

vs.

DAVID L. WINN, Warden of
the Federal Medical Center,
Devens and JOHN ASHCROFT, as
Attorney General of the
United States,

          Defendants

_____/

**03**CV **4 0 2 7 9** EFH

CIVIL ACTION NO.

MAGISTRATE JUDGE _Cohen_

IN CLERKS FILE
2003 DEC 15 P
U.S. DISTRICT
DISTRICT COURT
OF MASS.

## COMPLAINT

### PARTIES

1.     The Plaintiff is a citizen of the State of New York, presently incarcerated
at the Federal Medical Center, Devens Camp ("FMC Devens Camp") in Ayer, Massachusetts.

2. (a)     The Defendant David L. Winn is the Warden of the FMC Devens Camp
and he is sued as he is an officer and employee of the Bureau of Prisons of
the Department of Justice of the United States (the "DOJ") and not individ-
ually.  The Defendant Winn is, upon information and belief, a resident of the
Commonwealth of Massachusetts.

     (b)     The Defendant Ashcroft is the Attorney General of the United
States and is sued as he is the Chief Executive Officer of the Department of
Justice of the United States, and not individually.    The Defendant Ashcroft
frequently delegates his powers to act to, or acts through senior officers
of the DOJ including a Deputy Attorney General and Assistant Attorney General.

-1-

The Defendant Ashcroft is, upon information and belief, a resident of
the District of Columbia.

## JURISDICTION AND VENUE

3.  The jurisdiction of this Court is founded under the provisions
of 28 USC §§ 1331, 1361, 1367(a) and 2201.

4.  Venue in this Court is founded under 28 USC §1391(a).

## STATEMENT OF THE CASE

5.  The Plaintiff seeks injunctive and declaratory relief against the
application by the Defendants to the Plaintiff of a Memorandum dated Dece-
mber 20, 2002 from the Bureau of Prisons ("BOP") of the DOJ. The Memorandum
contains a directive to the Defendant Winn which has the effect of changing
the date on which the Plaintiff would become eligible for consideration for
transfer to a Community Corrections Center ("CCC" or "Halfway House") from
at least as early as January 2, 2004 (six months before his statutory release
date of July 2, 2004) to the date of April 26, 2004 (three days after his
statutory release date less ten percent (10%) of his sentence to be served).

6.  The Plaintiff asserts that such a change violates the Plaintiff's
rights not to be subject to an **ex post facto** application of law in violation
of Article 1, Sec. 9, Clause 3 of the Constitution of the United States, and
not to be deprived of liberty or property without due process of law in vio-
lation of Article V of the Amendments to the Constitution.

-2-

7.    The Plaintiff also avers that the above recited Memorandum purports to apply a rule of the BOP which was not promulgated pursuant to 5 USC §553, the "Administrative Procedure Act" or "APA".

### FACTS

8.    On May 10, 2002, the Plaintiff was sentenced by the United States District Court for the Northern District of New York to a term of confinement of twenty-seven (27) months and ordered to report to commence his sentence on July 18, 2002.

9.    On July 18, 2002, the Plaintiff reported to the officials of the BOP at the Federal Medical Center, Devens Camp in Ayer, Massachusetts and commenced serving his sentence.

10.    On or about July 18, 2002, the Defendant Winn caused to be issued to the Plaintiff an Admission and Orientation Inmate Handbook (Revised: January 1, 2002) ("A&O Handbook"), which contained on page 25, the following:

> ... **Community Corrections Center (Halfway House):** The purpose of a Community Corrections Center (CCC) is to provide inmates a positive transition from the institution to a community based correctional setting and to final release. The length of stay in a center is determined by individual needs, availability of services in conjunction with institutional adjustment and instant offense behavior. Placement in a CCC facility will generally range between thirty (30) and one hundred eighty (180) days. The exact range of placement is determined on a case by case basis.

11.    Upon information and belief, a "revised May 13, 2003 A&O Handbook containing the "Release" statement recited above is being issued to new inmates at FMC Devens, at least as of the date of the filing of this Complaint.

-3-

12.   On July 18, 2002, upon information and belief, and con-
tinuously until at least as of the date of the filing of this Complaint,
the BOP had in effect a "Program Statement Number 7310.04, Date: 12/16/98,
SUBJECT:   Community corrections Center (CCC) Utilization and Transfer Proc-
edure ("PS 7310").  PS 7310 states the following in Section 5 Pages 3 & 4:

> "5.   STATUTORY AUTHORITY. 18 USC § 3624(c) provides:
>
>> 'The Bureau of Prisons shall, to the extent practicable,
>> assure that a prisoner serving a term of imprisonment
>> spends a reasonable part, not to exceed six months, of the
>> last ten percentum of the term to be served under conditions
>> that will afford the prisoner a reasonable opportunity to
>> adjust to and prepare for the prisoner's reentry into the
>> community. The authority provided by this subsection may
>> be used to place a prisoner in home confinement. The
>> United States Probation Office shall, to the extent pract-
>> icable, offer assistance to a prisoner during such pre-
>> release custody.'
>
> 18 USC § 3621(b) provides:
>
>> 'The Bureau of Prisons shall designate the place of the
>> prisoner's imprisonment. The Bureau may designate any
>> available penal or correctional facility...the Bureau de-
>> termines to be appropriate and suitable.' A CCC meets
>> the definition of a 'penal or correctional facility.'
>> [Lack of new paragraph and closed quotation mark **sic**.]
>
> Therefore, the Bureau is not restricted by §3624(c) in design-
> ating a CCC for an inmate and may place an inmate in a CCC for
> more than the 'last ten per centum of the term,' or more than
> six months, if appropriate.
>
> Section 3624(c) however, does restrict the Bureau in placing
> inmates on home confinement to the last six months or (10%)
> of the sentence, whichever is less."  (Emphasis supplied.)

13.   Upon information and belief, the FMC Devens Camp, of which the
Defendant Winn is the Warden, has consistently transferred the vast majority
of its inmates to CCC's for periods of time in excess of ten percent (10%)
of their sentences, frequently for six (6) months, since its establishment
as a facility of the BOP in 1998.

-4-

14.    A CCC is a penal or correctional facility within the meaning of 18 USC §3621(b).

15.    As early as late July, 2002, in reliance upon the "A&O Handbook," the provisions of Program Statement 7310, and the consistent practices set forth above, the Plaintiff requested his former employer to hold open his job until his anticipated date of transfer to a CCC in January, 2004. The Plaintiff also made arrangements with a third party to provide primary caregiving services to his elderly father, of whom he is the only child until January 2004.

16.    Upon information and belief, the Plaintiff's former employer may not be able to hold his job open after January 2004. Plaintiff's family will be seriously affected by arranging for the above recited third party to act as primary caregiver for his father between January of 2004 and April 2004.  In addition, the Plaintiff's family will be delayed in his return to provide economic and emotional support to his wife and children.

17.    On December 13, 2002, an "opinion" was sent by a Principal Deputy Asst. Attorney general in the DOJ Office of Legal Counsel to the Deputy Attorney General (the "12/13/02 Opinion") which stated **inter alia,** that the BOP's practice of transferring inmates to a CCC for longer than the lesser of ten percent (10%) of the term to be served or six (6) months was "notlawful."

18.    On December 16, 2002, the Deputy Attorney general sent a "Memorandum" to the Director of the BOP (the "12/16/02 Memorandum") in which he referred **inter alia,** to the 12/13/02 Opinion and stated that the authority of the BOP to transfer an inmate to a CCC is limited to the authority in 18 USC §3624(c)

-5-

to transfer for the lesser of six (6) months or ten percent (10%) of the term to be served. No reference was made to the BOP's authority under 28 USC §3621(b).

19. Copies of the December 13, 2002 "Opinion" and the December 16, 2002 "Memorandum" are attached and marked **EXHIBIT "A" and EXHIBIT "B"** respectively.

20. On December 20, 2002, the Assistant Director/Correctional Programs Division and the Assistant Director/General Counsel of the BOP sent a "Memorandum for Chief Executive Officers" on the "Subject: Community Confinement Procedure Changes" (the "12/20/02 Memorandum") to, among others, the Defendant Winn.

21. The 12/20/02 Memorandum referred to the 12/13/02 Opinion and stated **inter alia,** that "[e]ffective immediately" the BOP's CCC designation authority is limited to the "last 10% of the prison sentence, not to exceed six months." It directed that "future pre-release CCC designation cases must be immediately reviewed to ensure compliance with this revised procedure before the inmates depart their parent institutions."

22. The 12/20/02 Memorandum also directed the Chief Executive Officers, including the Defendant Winn, to "advise inmates wishing to challenge any aspect of this revised procedure to do so through the Bureau's Administrative Remedy Program." A copy of the 12/20/02 Memorandum is attached and marked **EXHIBIT "C".**

23. On December 24, 2002, the Defendant Winn orally informed the Plaintiff (and all other inmates at FMC Devens Camp) that a new DOJ Opinion

-6-

on CCC eligibility had been received, briefly described his understanding of its effect as changing the practice of six (6) month transfers regardless of the length of sentence, and stated that he believed that the opinion was being reviewed by BOP attorneys and may be "appealed." Upon information and belief the BOP has never "appealed" the DOJ 12/13/02 Opinion.

24.    On July 16, 2003, the Plaintiff filed a Request for Administrative Remedy (a so-called "BP-9") with the Defendant Winn, after an attempt at informal resolution had been declined by an agent of the Defendant Winn in a so-called "BP-8." The BP-9 is the first step of the BOP's Administrative Remedy Program referred to in the 12/20/02 Memorandum and as also set forth in 28 CFR §542.10--§542.19.

25.    In his BP-9, the Plaintiff challenged the so-called "procedure changes" recited in the 12/20/02 Memorandum as not procedural but substantive; as being retroactively applied to him in violation of the **ex post facto** and due process clauses of the Constitution; and as based upon an erroneous "opinion" that a CCC is not a "penal or correctional facility" within the meaning of 18 USC §3621(b).

26.    On July 30, 2003, the Defendant Winn responded to the Plaintiff's BP-9 and denied his Request, citing a provision of PS 7310 as "indicating" that "final and specific release preparation plans, including a decision as to CCC referral, is normally established at a team meeting no later than 11-13 months before an inmates projected release date."

-7-

27.    The Defendant Winn further stated that Plaintiff's "Unit Team" had put Plaintiff in for a CCC placement based upon Plaintiff's institutional adjustment and sentence length." Defendant Winn further stated: "normally inmates with 27 months to serve are not referred for a six (6) month placement. A six (6) month placement at CCC is reserved for inmates who have completed the Residential Drug Program and those who have served over 10 years of federal time."

28.    On August 6, 2003, the Plaintiff appealed the Defendant Winn's response to his BP-9 by filing a Regional Administrative Remedy Appeal (a so-called "BP-10") addressed to the BOP's Regional Director pursuant to 28 CFR §542.10--§542.19. In his BP-10 the Plaintiff asserted that the Warden's statements as set forth in paragraph 26 above relating to "normal" practices as to CCC referrals and the "reservation" of 6 months CCC placements to Drug Program inmates and inmates who have served over 10 years of federal time were erroneous statements of law and misleading statements of Camp Devens policy up to December 20, 2002.

29.    The Plaintiff further asserted that the Warden's response to his BP-9 had been criticized by several United States District Courts as **ex post facto** and violative of due process, and that the BOP's position had not been properly promulgated pursuant to the Administrative Procedures Act. The Plaintiff cited several cases in the context of the direct designation authority of federal courts to CCC's. The Plaintiff also asserted that a CCC is a "penal or correctional facility" within the meaning of 18 USC §3621(b).

-8-

30.  On September 8, 2003, the Regional Director of the BOP responded to Plaintiff's BP-10 and denied his appeal, claiming that Plaintiff's placement in a CCC to commence April 26, 2004, was appropriate and in accordance with the provisions of 18 USC §3624(c). The Regional Director did not address any other issues that were raised by the Plaintiff's appeal.

31.  On September 18, 2003, the Plaintiff appealed the Regional Director's response to the BP-10, by filing a Central Office Administrative Appeal (a so-called "BP-11") addressed to the General Counsel of the BOP pursuant to 28 CFR§542.10--§542.19. That BP-11 was received by the Central Office on September 25, 2003. In his BP-11, the Plaintiff restated the reasons for his challenge and appeal as set forth in his BP-9 and BP-10.

32.  In support of his appeal the Plaintiff cited a decision of the United States District Court for the District of Massachusetts in **Monahan v. Winn, 276 F. Supp. 2d 196 (D.Mass. 2003).** In addition, the Plaintiff appealed the Regional Director's silence as to the Defendant Winn's mistatements of law and facts as to the policy as to CCC placement for inmates at Camp Devens. The appeal also noted that it was addressed to the General Counsel as an attorney and requested that the BOP either follow the law of the cases cited or explicitly state the reasons for not doing so.

33.  As of November 5, 2003, the Plaintiff had not received any response from the Office of General Counsel at the Central Office to his BP-11, nor any notice of extension of the forty (40) calendar days allowed pursuant to

-9-

28 CFR §542.18. By virtue of the provisions of that section, the BP-11 was considered denied.

34.    On November 14, 2003, the Plaintiff received a one-page document from Harrell Watts, National Inmate Appeals dated November 6, 2003 denying the Plaintiff's BP-11 appeal. This document was delivered thru the prison inmate mail system, but was not accompanied with an envelope and was not post-marked. In any event, it was untimely, was not from an attorney and merely repeated the prior statements of the Warden and the Regional Director. The Plaintiff has construed the document as a denial for the relief he had requested.

35.    The Plaintiff has exhausted his administrative remedies, but the Defendants and their agents have willfully and repeatedly failed to participate in the process of exhaustion by refusing to respond to the merits of the issues raised by the Plaintiff in his request for administrative relief.

36.    Specifically, the Plaintiff sought, in his exhaustion of administrative remedies, to allow the BOP to correct its own errors with respect to CCC eligibility dates; to facilitate review by affording the courts the benefits of its experience as an agency; to serve judicial economy by compiling a factual record as to such matters as the period of time the BOP practice of six (6) month transfers to CCC's were in effect regardless of the ten percent (10%) of time to be served date, and the number of inmates so transferred from the Defendant Winn's facility at Camp Devens.

-10-

37.    The Plaintiff is being deprived of his constitutional rights by the actions of the Defendants as set forth in paragraphs 5-36 of the instant Complaint in denying to the Plaintiff eligibility for at least a six (6) month transfer to a CCC based upon an "Opinion" of the DOJ and a directive to the BOP which: (1) are being applied retroactively in violation of the Plaintiff's rights under the **ex post facto** and due process clauses of the Constitution; (2) constitute a "rule" which should have been, but was not, the subject of notice and comment under the requirements of the APA; and (3) are wrong as a matter of law in asserting that a CCC is not a "penal or correctional facility" within the meaning of 18 USC §3621(b).

38.    An actual controversy exists between the Plaintiff and the Defendants as to whether, when, and how the Defendants will apply various provisions of law, Program Statements, and an "Opinion" of the DOJ to the Plaintiff's transfer to a CCC.

39.    If the Defendants persist in their stated position which denies the Plaintiff eligibility for transfer to a CCC on January 2, 2004, and instead will keep him incarcerated at camp Devens until April 26, 2004, the Plaintiff will suffer irreparable harm by not being able to resume his employment upon his transfer and release, and by disrupting his family in its providing/as a primary caregiver of his elderly father and delaying the Plaintiff's return to provide economic and emotional support to his wife and children.

-11-

40.   that all of the actions constitute a denial of Plaintiff's right not to be the subject of **ex post facto** law and not to be deprived of liberty and property without due process of law.

41.   The Plaintiff has no adequate remedy at law for damages,

WHEREFORE, the Plaintiff prays for the following relief:

A.   That The Court enjoin the Defendants, DAVID L. WINN and JOHN ASHCROFT and their agents, employees and attorneys, from delaying the transfer of the Plaintiff, NICOLA MESSERE to a half-way house and to deny him his eligibility for such transfer until April 26, 2004 based on an opinion of the Department of Justice dated December 13, 2004.

B.   That The Court determine and declare pursuant to 28 USC §2201, the the provisions of 28 USC §3621(b) authorize; the Defendant Winn to transfer the Plaintiff to a CCC or Half-way House on January 2, 2004 in accordance with the Program Statement standards and practice of the Bureau of Prisons, Federal Medical Center, Camp Devens, in Ayer, Massachusetts in effect prior to December 13, 2002.

C.   That the Court order such further relief which law and justice require.

DATED:  ~~NOVEMBER~~ December 17, 2003        RESPECTFULLY SUBMITTED,

NICOLA MESSERE, PRO SE ***
55094-066 UNIT I (CAMP)
FEDERAL MEDICAL CENTER, DEVENS
P.O. BOX 879
AYER, MA. 01432

*** The Plaintiff acknowledges that he was assisted in the preparation of this Complaint by other inmates at Camp Devens during their leisure time in accordance with the provisions of 28 CFR §543.11(f).

-12-