UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NICOLA MESSERE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civ. Action No. 03-CV-40279-EFH |
| v. ) | |
| ) | |
| DAVID L. WINN, and ) | |
| JOHN ASHCROFT, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

### INTRODUCTION

Plaintiff, Nicola Messere ("Messere"), an inmate at Federal Medical Center Devens ("FMC Devens"), brought this suit challenging the legality of a new policy of the Bureau of Prisons ("BOP") regarding eligibility for placement in Community Corrections Centers ("CCC") at the end of a prisoner's sentence. For the reasons stated below, the Complaint fails to state a claim upon which relief can be granted and therefore must be dismissed.

### STATEMENT OF FACTS[1]

After he was found guilty of two counts of possession with intent to distribute and distribution of crack cocaine, Messere was sentenced by the United States District Court for the Northern District of New York on May 10, 2002, to a term of confinement of twenty-seven (27) months. There is no indication that the court recommended placement in a CCC. Petitioner alleges that he reported to FMC Devens on July 18, 2002, at which time he commenced serving

---

[1] In accordance with the standard of review upon a motion to dismiss, the factual allegations of the complaint are accepted as true for purpose of this motion. See Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994).

his sentence. Complaint ¶ 9. He also alleges that it was his belief, based on the general practices of the BOP and the information provided in the Admission and Orientation Inmate Handbook, that he would be released to a CCC six months prior to his release date. Complaint ¶ 15.

Prior to December 2002, it was the policy of the BOP, as expressed in an Inmate Handbook and a BOP document entitled Program Statement Number 7310.04 (December 16, 1998), that it could consider inmates for placement in a CCC for more than the last ten percent of an inmate's term of imprisonment or more than six months of the sentence, if appropriate. Messere alleges that he arranged for a third party to care for his elderly father until six months before his statutory release date. Complaint ¶ 15. Plaintiff also claims that he requested that his former employer hold his job open until six months prior to his statutory release date. Id.

On December 13, 2002, the Office of Legal Counsel ("OLC ") of the United States Department of Justice issued an opinion concluding that the Federal Bureau of Prisons' ("BOP") former policy of initially designating to CCCs certain defendants sentenced to terms of imprisonment was inconsistent with 18 U.S.C. §§ 3621, 3624(c), and the U.S. Sentencing Guidelines ("the Guidelines") and therefore unlawful. (A copy of the memorandum is attached hereto as Exhibit A, or can be found at: http://www.usdoj.gov/olc/bopimprisonment2.htm). This opinion ( "OLC Memorandum") also indicated that the BOP's past practice of transferring offenders to CCCs for a period exceeding the time limit specified in 18 U.S.C. § 3624 (c) (the last ten percent of the term of imprisonment, not to exceed six months) was in violation of 18 U.S.C. § 3624(c) and thus impermissible. See id. at 7 n.6. By memorandum dated December 20, 2002, the Department of Justice advised the Director of the BOP that the BOP should conform its practices with the law as described in the OLC Memorandum (attached hereto as Exhibit B).

2

The Plaintiff alleges that under the pre-December 2002 BOP policy he would be considered for placement in a CCC as early as January 2, 2004, six months before his statutory release date.[2]  In contrast, under the new policy his CCC placement is limited to the last ten percent of his sentence; hence the earliest he might be placed in a CCC is April 26, 2004. Complaint ¶ 5.  The Plaintiff's August 9, 2002, Program Review Report, states that any recommendation for placement in a CCC would be reviewed within 11-13 months of his release date.  Declaration of Patrick Ward ("Ward Dec.") at Ex. I (Program Review Report, 8/9/2002). The next Program Review Report, dated January 28, 2003, estimates that the Plaintiff's placement in a CCC to commence on April 23, 2004, marking the beginning of the final 10% of his prison sentence.  Ward Dec. at Ex. J (Program Review Report, 1/24/2003).  Three subsequent Program Review Reports acknowledge that the Plaintiff was scheduled to be placed in a CCC on April 26, 2004.  Ward Dec. at Exs. N, O, and P (Program Review Reports: 7/14/2003; 10/10/2003; 12/19/2003).  Messere signed all Program Review Reports.  Id. at Exs. I, J, N, O, and P.

Messere asserts that the new BOP policy violates his rights under the Ex Post Facto and Due Process clauses of the United States Constitution, was established in violation of the notice and comment requirements of the Administrative Procedures Act ("APA"), and is wrong as a matter of statutory interpretation.  Invoking jurisdiction under, inter alia, 28 U.S.C. § 2241, he

---

[2] The Complaint alleges (at ¶ 13) that "[u]pon information and belief," FMC Devens "has consistently transferred the vast majority of its inmates to CCCs for periods of time in excess of ten percent (10%) of their sentences, frequently for six (6) months. . . ."  Defendants dispute this characterization, but acknowledge that prior to the December 2002 change in policy, some inmates were placed in CCCs for periods in excess of the last ten percent of their sentence not exceeding six months.  This factual dispute is not material to the issues raised by this motion.

seeks a writ directing Defendants to designate him to a CCC on January 2, 2004, or as soon as practicable thereafter.

## ARGUMENT

I.    **PETITIONER HAS FAILED TO STATE A CLAIM.**

A.    **The New BOP Policy Is a Correct Application of the Law.**

In this case, the relevant statute, 18 U.S.C. 3624(c), provides in pertinent part:

> **Pre-release custody.** The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, <u>not to exceed six months,</u> of the last ten per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

(emphasis added). Section 3624(c) thus sets an unambiguous limit on the amount of time that a prisoner may spend in a CCC at the end of his "term of imprisonment" – the last ten percent of the sentence, not to exceed six months. Therefore, were the BOP to place a prisoner into community confinement pursuant to 3624(c) for more than the last ten percent or in excess of six months of the prisoner's sentence, the BOP would be in violation of the plain language of the statute.

The legislative history of section 3624(c) further bolsters the mandatory nature of the time limits set for community confinement. In 1990, the House and Senate considered the Crime Control Act of 1990.[3] The House Judiciary Committee reported out favorably on the bill, which would have eliminated the limit on the length of pre-release custody as outlined in section

_____

[3]Pub. L. No. 101-647, 1990 U.S. Code Cong. & Ad. News 4789, 4913.

4

3624(c) (six months or ten percent of the sentence, whichever is shorter) and would have authorized the BOP to place prisoners in community or home confinement for longer periods.

The expansion of BOP authority was met with opposition. During ensuing floor debate on H.R. 5269, Representative McCollum offered an amendment that would restore the existing limits on BOP discretion regarding community confinement. Representative McCollum further modified the statute by adding in a sentence indicating that home confinement was a permissible option for the ten percent transition phase of a prisoner's sentence. He explained his amendment, stating:

> My amendment would give them that opportunity to allow some home confinement with or without monitoring by telephonic or electronic signaling devices. The reason I am offering this amendment is because in the language of the bill as it is now out here before us, there has been a concern I have had for some time that we are giving a whole lot more authority to the Bureau of Prisons than we really ought to . . . . The language of the bill, without being amended, would have effectively allowed the Director of the Bureau of Prisons to release any prisoner for any length of time under home custody or whatever, so they would not have had to have served a day in prison.

136 Cong. Rec. 27,587-88 (1990). The amendment was approved by the House on a voice vote. Id. at 27,588. The provisions of H.R. No. 5269 pertaining to community confinement centers, including Representative McCollum's amendment, were subsequently incorporated into the final bill that was enacted.[4] Thus, the legislative history supports the mandatory nature of the time limits imposed by section 3624(c).

The OLC Memorandum interprets the plain meaning of the statute. While most of it

---

[4] See S.3266 (101st Cong. 1990); 136 Cong. Rec. 36930 (1990) (passage in the House); 136 Cong. Rec. 36318 (passage in the Senate).

concentrates on section 3621(b), which addresses the BOP's use of community confinement at the outset of a sentence,[5] there is mention of section 3624(c) in a footnote:

> Your office has advised us that BOP, in exercising its authority under section 3624(c), has sometimes not abided by the time limitation set forth in that section. The authority conferred under section 3624(c) to transfer a prisoner to a non-prison site is clearly limited to a period "not to exceed six months, of the last 10 per centum of the term to be served," 18 U.S.C. §3624, and we see no basis for disregarding this time limitation.

OLC Memorandum at n. 6. This statement is in keeping with both the plain language and the legislative history of section 3624(c).

Further, four recent decisions in this District Court on the same point raised here, the propriety of transfer to a CCC for the last six months of a sentence when that exceeds 10% of the sentence, support the application of the plain language and meaning of section 3624(c). In Kennedy v. Winn, 03-CV-10568-MEL (Lasker, J.) (D.Mass. July 9, 2003), the defendant, who had been sentenced to 21 months in prison, sought relief in federal district court for placement into a community confinement center six months prior to his release date. In that case, Judge Lasker found that section 3624(c) was the controlling statute and that the petitioner was correctly denied placement into a halfway house for the last six months of his sentence because that would have exceeded the maximum 10% period of CCC confinement prescribed in 3624(c). Kennedy

---

[5] The previous BOP interpretations of 18 U.S.C. § 3621(b) have allowed for the designation of prisoners to CCCs at the outset of their sentences. It states in pertinent part:

**Place of imprisonment.**--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable . . .

at 4-5.

An opinion by Judge Stearns in <u>Rothberg v. Winn</u>, 03-CV-11308-RGS (D.Mass. Oct. 10, 2003) reinforces that the current BOP interpretation of section 3624(c) is correct. The Petitioner in <u>Rothberg</u> was also challenging the timing of his end-of-sentence placement into a CCC. In dismissing the complaint, Judge Stearns found that section 3624(c) is controlling, and further stated that the BOP's prior interpretation of section 3624(c) was a mistake. <u>Id.</u>, at 2. <u>Accord, United States</u> v. <u>Mikutowicz</u>, 2003 WL 21857885 (D. Mass. August 6, 2003) (Zobel, J.).

A more recent opinion by Chief Judge Young in <u>Goldings v. Winn, et al.</u>, 03-CV-40161-WGY (D.Mass. Oct. 23, 2003), adopted the <u>Rothberg</u> and <u>Kennedy</u> courts interpretation of section 3624(c). In dismissing the Petitioner's complaint, Judge Young found that the BOP had simply corrected an erroneous interpretation of section 3624(c) and, therefore, there was no constitutional or statutory violation. <u>Goldings</u> at 2. This decision was expressly followed by this Court in dismissing the subsequent case of <u>Turano v. Winn</u>, 03-CV-40188-EFH (D.Mass. Jan. 7, 2004).[6]

The Plaintiff, on the other hand, asserts that CCCs are equivalent to any penal or correctional facility, thus attempting to implicate section 3621(b). However, the instant case involves the issue of whether it is correct to allow a prisoner to serve more than ten percent of the end of the sentence in a halfway house, thus contravening the plain language of § 3624(c). Thus, the Plaintiff's case is akin to <u>Kennedy</u>, <u>Rothberg</u>, <u>Goldings</u> and <u>Turano</u>, and should be dismissed.

---

[6] Copies of the slip opinions in <u>Kennedy v. Winn</u>, <u>Rothberg v. Winn</u>, <u>Goldings v. Winn, et al.</u>, and <u>Turano v. Winn</u> are attached hereto as Exhibits D, E, F and G.

The plain language of the statute, its legislative history, and the case law on end-of-sentence cases demonstrate that section 3624(c) is controlling, and that the BOP has correctly applied the law. Therefore, in this case, had the BOP released the Plaintiff into community confinement on January 2, 2004, it would have done so in violation of §3624(c). The BOP's calculation of the Plaintiff's release date is in accordance with the OLC Memorandum and section 3624(c). Thus, the Plaintiff's claims should be dismissed.

B.   **The BOP's Change In Policy Does Not Violate the Administrative Procedure Act**.

Plaintiff's claim that the new BOP policy was made in violation of section 553 of the Administrative Procedure Act ("APA") is without merit. Section 553 of the APA requires that new agency rules be made subject to a period of notice and comment. 5 U.S.C. § 553. The notice and comment provisions apply only to substantive or legislative rules; they do not apply to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." Lincoln v. Vigil, 508 U.S. 182, 196 (1993)(citing 5 U.S.C. § 553 (b)).

Courts have defined the distinction between interpretive and legislative rules as a matter of operation. Legislative rules operate to create obligations that are not already outlined in the general statute. Warder v. Shalala, 149 F. 3d 73, 80 (1st Cir. 1998). Interpretive rules, on the other hand, operate to interpret and "advise the public" on the agency's understanding of the statutes and rules that it administers. Shalala v. Guernsey Memorial Hospital, 514 U.S. 87, 99-100 (1995).

Several courts have deemed similar BOP program statements as "interpretive" rules that are not subject to notice and comment. See Reno v. Koray, 515 U.S. 50, 60-61 (1995)("It is true that the Bureau's interpretation appears only in a Program Statement-- an internal agency

8

guideline--rather than in published regulations subject to the rigors of the Administrative Procedure Act, including public notice and comment. But BOP's internal agency guideline, which is akin to an interpretive rule that does not require notice and comment, is still entitled to some deference, since it is a permissible construction of the statute."); Gunderson v. Hood, 268 F.3d 1149, 1154 (9th Cir. 2001); see also Fonner v. Thompson, 955 F. Supp. 638 (1997) (BOP guideline defining the possession of a firearm as a violent crime is an interpretive rule). Thus, the BOP policy statement that was subsequently corrected by the OLC Memorandum was not subject to the notice and comment provisions of the APA.

The First Circuit's decision in Warder further establishes that the change in BOP policy is not subject to notice and comment. Warder, 149 F.3d 73 (1st Cir.1998). Warder involved an administrative ruling that was issued by the Secretary of Health and Human Services. The ruling stated that certain equipment fell within the statutory definition of "durable medical equipment," and was therefore not reimbursable under Medicare. Id. at 76. The court held that the administrative ruling was interpretive and not legislative because the agency interpretation was clearly within the parameters set out by the statute. Id. at 80-81. The section of the OLC Memorandum that is at issue in this case is analogous to the administrative ruling in Warder because it involves an interpretation of the law that is clearly dictated by the governing statute.

The footnote within the OLC Memorandum that addresses section 3624(c) is akin to a Program Statement because it provides guidance to the agency on how to interpret its statutory mandate. The BOP's interpretation of section 3624(c) does not change the existing statute or create any new obligations. Rather, it is a permissive reading of the plain language of the statute. Agencies are generally required to interpret and implement statutory mandates. See Chevron v.

U.S., 467 U.S. 837 (1981).  In the instant case, the agency has adopted an interpretation that is clearly within the letter of the law as it is exactly the letter of the law.

The OLC Memorandum serves only to reinforce the agency's congressional mandate by giving effect to the clearly stated will of Congress.  The statute unambiguously states that prisoners are to spend no more than the last ten percent of their sentences in a CCC, not to exceed six months.  This agency reinforcement of the statutory language is not subject to the notice and comment period that is required by section 553 of the APA because it is an interpretive memorandum.  Unlike legislative rules that are subject to section 553 of the APA, the OLC Memorandum does not create any new law or change the existing regulation in any meaningful way.  The BOP's interpretation is permissible because it is clearly within the letter of the law and as such, it can be afforded some deference.  Therefore, because there is no violation of the APA, the Plaintiff's claim must be dismissed.

C.      **The New BOP Policy Does Not Implicate the Ex Post Facto Clause.**

The Plaintiff's claim that the BOP policy is in violation of the Ex Post Facto clause of the United States Constitution is flawed. The Ex Post Facto clause states, "No Bill of Attainder or ex post facto Law shall be passed." U.S. Const. Art. 1, § 9, cl. 3.  A legislative action violates the Ex Post Facto clause when it creates a crime that did not exist at the time of punishment or increases the punishment of an already established crime. See Garner v. Jones, 529 U.S. 244, 249-250 (2000); Lynce v. Mathis, 519 U.S. 433, 441 (1997).

The new BOP policy did not violate the Ex Post Facto clause because it did not change section 3624(c).  The OLC Memorandum offered an interpretation of the existing statute in order to correct any erroneous interpretations of the statute.  This type of administrative action has been

10

determined to not be a violation of the Ex Post Facto clause. See Metheny v. Hammonds, 216 F. 3d 1307, 1310-1311 (11th Cir. 2000) (collecting cases); cert. denied, 531 U.S. 1196, (2001).[7]

The Ex Post Facto clause does not forbid the correction of the misinterpretation of an existing statute even if the correction would serve to disadvantage one who relies on the misinterpretation. Stephens v. Thomas, 19 F.3d 498, 500 (10th Cir. 1994); cert. denied, 513 U.S. 1002 (1994) (concluding no Ex Post Facto violation when department of corrections stopped applying good-time-credit statute to prisoners with life sentences when state attorney general informed department that this application was prohibited by statute).

Further, the actual sentence that the Plaintiff was given has not changed. His subjective expectation that he would serve about a quarter of his sentence in a community corrections facility does not amount to a change in his punishment. In Dominique v. Weld, 73 F.3d 1156 (1st. Cir. 1996), the court held that changes in policies that resulted in an inmate's termination from a work-release program did not increase the inmate's punishment in violation of the Ex Post Facto clause. 73 F. 3d 1161-62. In fact, the Dominique court found that the change of the conditions of confinement at issue did not even implicate the Ex Post Facto clause. Id. at 1163.

Plaintiff's punishment has not been increased or changed. There is nothing retroactive about the application of the existing law to the Plaintiff's sentence. He has not been removed from community confinement and placed back into FMC Devens. His final release date is and has always remained the same. Therefore, based on these facts and the existing law, the Plaintiff's Ex Post Facto claim must be dismissed.

---

[7] Judge Stearns in Rothberg (discussed in this memorandum at pages 6-7) states that "a constitutional violation cannot arise from the correction of an erroneous interpretation of an otherwise valid law." Rothberg at 2.

D.    **The New BOP Policy Does Not Violate the Due Process Clause.**

The BOP policy does not violate the Due Process clause of the United States Constitution.   In <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), the Supreme Court held that liberty interests implicated by the Due Process clause of the Constitution will generally be limited to freedoms from restraint that are "atypical" or that pose a "significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484.  Limiting the Petitioner's transfer to a CCC to the statutory maximum of 10% of his prison term can be characterized as typical and not an "atypical" part of the prisoner's punishment, and certainly does not pose a "significant hardship" on him.

It is well established that federal prisoners do not have a protected liberty interest in CCC placement, and that the Bureau of Prisons has complete and absolute discretion in the determination of halfway house placement. <u>United States v. Laughlin</u>, 933 F. 2d 786 (9th Cir. 1991); <u>U.S. v. Morales-Morales,</u> 985 F. Supp. 229, 230 -231 (D.P.R.1997);.  In general, prisoners do not have "inherent liberty interests in particular modes, places, or features of confinement or custody." <u>Asquith v. Department of Correction</u>, 186 F. 3d 407, 410 (3rd Cir. 1999).  Further, one Circuit noted that section 3624(c) does not require the BOP to even ensure that all prisoners participate in community confinement programs, and that the statute merely requires the BOP to place prisoners into such programs if it is "practicable." <u>United States v. Restrepo</u>, 999 F.2d 640, 645 (2nd Cir. 1993); <u>see also</u> <u>Morales-Morales</u>, at 231 (court was without jurisdiction "to designate the manner and place of defendant's pre-release custody.").

In this case, the Plaintiff's liberty interests as established by the Due Process clause have not been violated. The Plaintiff has no right to a particular placement for the purposes of his

12

confinement. <u>Asquith</u> at 410. In fact, the statutorily designated 10% of his sentence that could possibly be spent in community corrections is not mandated, but only allowed "if practicable." <u>Restrepo</u>, 999 F.2d 640, 645 (2nd Cir. 1993). Thus, Plaintiff's claim to a liberty interest is meritless, as no such interest has been created by the statute or exists as a matter of Constitutional law.

Moreover, there is no evidence within the record that indicates that the Plaintiff was ever recommended for a CCC placement beyond the statutorily required ten percent. To the contrary, the record indicates that CCC placement was planned for the statutorily set date, around the third week of April in 2004. Ward Dec., Exs. J, N, O, and P (Program Review Reports: 1/24/2003; 7/14/2003; 10/10/2003; 12/19/2003). Plaintiff read and signed these reports. <u>Id</u>. His desire to spend almost a quarter of his sentence in a CCC is of little consequence, as he has no protected interest in the place of his custody. <u>See</u> <u>Asquith</u> at 410. As such, Plaintiff's claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Complaint fails to state a claim upon which relief can be granted, and, accordingly it should be dismissed.

Respectfully submitted,

DAVID WINN, and
JOHN ASHCROFT

By their attorney

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

By: _____
Jeremy M. Sternberg
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Certificate of Service
I hereby certify that a true copy of
the above document was served upon
(each party appearing pro se and) the
attorney of record for each. Other
party by mail/hand on _____

_____        _____
DATE              Assistant U.S. Attorney

14