UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NICOLA MESSERE,

     Plaintiff,

  v.

DAVID L. WINN, et al.,

     Defendants

_____/

CIVIL ACTION NO. 03-CV-40279-EFH

HON. EDWARD F. HARRINGTON, USDJ

PLAINTIFF'S MEMORANDUM IN SUPPORT OF ANSWER TO
DEFENDANT'S MOTION TO DISMISS

NOW COMES the above named Plaintiff, NICOLA MESSERE, Pro Se and hereby files this Memorandum in Support of his Answer to Defendant's Motion to Dismiss and in support states as follows:

PRELIMINARY STATEMENT

The facts relating to the instant case are not in dispute. The Plaintiff has filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(a) which remains pending. The Court can construe the Defendant's Motion to Dismiss as a Counter Motion for Summary Judgment. Whatever form the Court intends to pursue the relief which is being requested should be decided promptly in order to insure that any further delay will not "moot" the present action.

The Plaintiff asks that this Court liberally construe the allegations in the Complaint filed by him and to grant the injunctive relief sought by transferring him to the appropriate half-way house forthwith.

-1-

## LEGAL ARGUMENT

**PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF IS APPROPRIATE UNDER THE FACTS OF THE INSTANT CASE.**

The Plaintiff's request for injunctive relief asks that the Court direct the Defendant Warden to authorize his immediate release to the appropriate half-way house and is premised on the authority which Plaintiff has recited in his Motion for Summary Judgment and is incorporated herein by reference.

To the extent that such relief is to be considered by the Court, the Petitioner accepts the standards delineated in **Ross-Simons of Warwick v. Baccarat Inc., 102 F3d 12 (1st Cir. 1996).** In that case the First Circuit outlined the four part framework that requires trial courts to consider: (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of re-levant impositions, i.e., the hardship to the movant if no injunction issues; and (4) the effect (if any), of the court's ruling on the public interest; in deciding whether injunctive relief should be authorized.

The Plaintiff can point to many recent decisions from this District as well as from other districts which support his position and which establishes that he will likely succeed on the merits. Assuming that the Court would deny injunctive relief, the harm to the Plaintiff is obvious, he will be denied release and placement into a half-way house when he is actually en-titled to such relief. There is no hardship to the Defendants if injunctive

-2-

relief is granted. The prison camp will not be affected or prejudice result
if the Plaintiff is released to a half-way house prior to the 10% date.
The public interest will be served if the Plaintiff is released to the
half-way house under the policy in existence prior to December 2002, in
that the policy of insuring inmates positive transition from prison to their
respective communities will be vindicated.

Based on the arguments presented in this Brief and the authority re-
cited in the Plaintiff's prior submission to the Court, the Motion to Dismiss
should be denied and the Plaintiff's request for injunctive relief granted.

### STANDARD FOR DECIDING RULE 12(b)(6) MOTIONS.

The standard for deciding Motions to Dismiss pursuant to Fed. R. Civ. P.
12(b)(6) is well settled. A Complaint should not be dismissed unless it app-
ears beyond doubt that the Plaintiff can prove no set of facts in support of
his claims that would entitle him to relief. **Conley v. Gibson**, 355 US 41,
45-46 (1957). In deciding a Motion to Dismiss, all factual allegations and
all reasonable inferences that can be drawn must be accepted as true and viewed
in the light most favorable to the non-moving party. **Leatherman v. Tarrant
County Narcotics Unit**, 507 US 163 (1993). Dismissal is proper under 12(b)(6)
if, as a matter of law, it is clear that no relief can be granted under any
set of facts that could be proved consistent with the allegations alleged in
the Complaint. **Hishon v. King & Spaulding**, 467 US 69, 73 (1984).

The Complaint must be read in the light most favorable to the Plaintiff,
and all well-pleaded material allegations in the Complaint must be taken as

-3-

true. **Estelle v. Gamble,** 429 US 97 (1976). See also, **Kiely v. Raytheon Co.,** 105 F3d 734, 735 (1st Cir. 1997); **Garita Hotel L.P. v. Ponce Fed. Bank, F.S.B.** 958 F2d 15, 17 (1st Cir. 1982); Cited in **Gorski v. New Hampshire Dept. of Corrections,** 290 F3d 466, 473 (1st Cir. 2000).[1]

With the above noted standard in place, the Plaintiff's complaint is premised upon allegations which form the basis of a valid cause of action. There is no basis for the Court's dismissal of the Complaint, and in fact the Court should grant the Plaintiff his requested for injunctive relief. The plaintiff responds to the legal arguments presented by the Defendant, seriatim.

I.    **THE PLAINTIFF HAS STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

A.    **The New BOP Policy Is An Incorrect Application of the Law.**

The Defendant's arguments and position recited in their Memorandum is based upon a review of the legislative history of 18 USC §3624(c). In addition, the DAG opinion of December 13, 2002 (EXHBIT A ATTACHED TO DEF-ENDANT'S MEMORANDUM) concludes that 18 USC §3621(b) does not permit the BOP to make an initial designation to a CCC, **in any case,** and the CCC's may be used only for "pre-release custody" during the last 10% of any prison sentence pursuant to §3624(c).

---

(1)    Even if the facts were to be considered not in dispute, which the Plaintiff avers is not true in the instant case, the Motion under 12(b)(6) should be denied based on the deferential standard accorded to the non-moving party in connection with such Motions. This is especially appropriate where the Plaintiff has not inserted "invective...bald assertions, unsupportable conclusions, periphrastic circumstances, and the like,..." in his Complaint. See **Aulson v. Blanchard,** 83 F3d 1,3 (1st Cir. 1996).

Prior to December 2002, the BOP had long construed §3621(b), like its pre-Sentencing Reform Act predecessor, former 18 USC §4082(b), to authorize the designation of a community corrections center (formerly known as community treatment centers) as the "penal correctional facility" for service of a federal sentence.  BOP Prog. Smt. 7310.04 (12/16/98) (current version); and prior versions, including Prog. Smt. 7310.01 (4/30/93).  As the Program Statement explains:

> 18 USC § 3621(b) provides:
>
> > "The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility...the Bureau determines to be appropriate and suitable."
> >
> > A CCC meets the definition of a "penal or correctional facility."
>
> Therefore, the Bureau is not restricted by §3624(c) in designating a CCC for an inmate....

Section 3624(c), adopted as part of the 1984 Sentencing Reform Act served to insure that all prisoners, "to the extent practicable," would receive a period of pre-release custody of at least 10% of their sentence (but not to exceed six months) to facilitate their re-entry into society after a period of secure imprisonment.

The Defendant's contention that there is a distinction to be made when there is placement at the outset of the sentence as opposed to such placement at the end of the sentence, is one that does not pass muster upon examination of the legislative and judicial history surrounding the applicable statutes.

-5-

The legislative history of the 1990 amendment to §3624(c) which specifically allowed even home confinement to be utilized as a pre-release form of community custody demonstrated that there was a long standing authority to designate a CCC initially, was not abrogated by implication when §3624(c) was adopted.  This is but one example that §3621(b) was not intended to change pre-exisiting law with respect to the authority of the BOP **at any stage of the sentence time frame.**  See **McCarthy v. Doe, 146 F3d 118, 123 fn. 2 (2d Cir. 1998).**  Since that pre-exisiting law included the authority to designate a CCC for service of a sentence of imprisonment, the BOP's action in reliance on the DAG's legal opinion to curtail such designation is contrary to the Congressional under-standing of the applicable statutes.  In fact it contradicts judicial auth-ority relating to the construction of those statutes.

In light of the clear history of §3621(b), it is unreasonable to read 18 USC §3624(c)--which declares the policy of Congress that the BOP give prisoners assistance in preparing for their release--as restricting the authority of the BOP to utilize the CCC placement for initial, mid-term or pre-release designation under the appropriate circumstances.  The latter statute deals with inmates who were **not** suitable for initial CCC placement due to the length of their sentence, their personal backgrounds, or the nature of their crimes requiring more secure incarceration.   Those inmates are nevertheless entitled, "to the extent practicable," as §3624(c) emphasizes, to assistance in preparing for release during the last 10% of their sentence,

-6-

which may include community confinement, but in any event not for more

than the last six months of the sentence to be served.  As the BOP's

own Program Statements have consistently recognized, neither this stat-

utory encouragement to the BOP to facilitate the process of pre-release

nor its limitations has any bearing on the general designation authority,

either at the beginning or at the end of the sentence that is served.[2]

Both before and after 1987 the Court's have correctly read §3621(b)

(ultimately derived from a 1930 enactment) as granting a "broad discretion...

in designating a place of imprisonment...." **McCarthy v. Doe, eupra., 146 F3d**

**at p. 123.**  Accord, **Howe v. Smith, 452 US 473, 482 (1981)** (noting BOP's dis-

cretion under former §4082 (b)).[3]

The December 2002, opinion of the DAG begs the issue which has been

raised by the Plaintiff in the Complaint which has been filed.  Further, it

attempts to examine the issue presented by suggesting that the controlling

statute is §3624(c) standing alone.  There is no such limitation either by

statutory construction or judicial analysis.

_____/

(2)    Under the correct reading of the awkwardly phrased §3624(c), the six
month/ 10% provision limits each prisoner's **entitlement** to pre-release con-
sideration, but it does **not** limit the BOP's authority, in **its** discretion to
utilize CCC's at any time, including for longer than six months, and from
the **beginning** as well as the **end** of the sentence.  Until December 2002,
this was always the BOP's interpretation of its authority under §3624(c).
See CCC Utilization and Transfer Procedure Program Statement 7310.04 (1998)
pp.1-4. Moreover, the policy of CCC placement at Camp Devens was reflected
in most if not all of the inmates at Camp Devens receiving 6 months CCC
Placement.  This fact has not been disputed in the instant case, nor in
any other case filed in the district by inmates at Camp Devens.

(3)    This designation has been called "open-ended." See Statutory Authority
to Contract With the Private Sector for Secure Facilities," 16 Op. OLC 65
(1992).

There are two compelling reasons for this Court to reject the Defendant's position as outlined in their Memorandum in Support of the Motion to Dismiss. First, nowhere in the Motion to Dismiss does the Defendant address or **deny** the facts as asserted in the Complaint filed by the Plaintiff. The reason is simple: (1) they are true and must be accepted as true, and (2) there is no ability to factually deny that the policy which existed at Camp Devens prior to December 2002 was to the effect that those inmates housed at that facility were authorized by the Defendant Warden, David L. Winn to receive 6 months CCC placement. Thus, the Defendant's Memorandum failed to address the crucial factual premise upon which the Plaintiff's Complaint was based.

Second, the Defendant's Memorandum is intellectually dishonest in that it presents only those decisions which purportedly favor the position being espoused by the government, and withholds from the Court **all** of the published decisions which have held that to the extent that the new policy prohibits the BOP from transferring inmates to a CCC for more than the lesser of the last 10% of the last six months of a sentence is **unlawful**.

The decisions which are relied upon by the Defendants and are attached as Exhibits D,E,F and G are unpublished slip opinions which in most cases do not even address the issues which were raised in those respectives cases. [4]

_____ /

(4)    In **Kennedy v. Winn**, **Rothberg v. Winn**, **Goldings v. Winn**, et al., and **Turano v. Winn**, there was no disposition of the constitutional issues raised and therefore those decisions lack the force of relevant legal precedent.

On the other hand, the Plaintiff in his previously submitted Memorandum in support of his Motion for Summary Judgment outlined all of the authority even those cases which supported the government's position. The December 2002 policy change has generated a significant number of cases in many districts around the country. In the vast majority of those cases, the courts have held that this new policy was unlawful. See, e.g., **Monahan v. Winn, 276 F. Supp.2d 196 (D. Mass. 2003); Estes v. Federal Bureau of Prisons, 273 F. Supp. 2d 1301 (S.D. Ala. 2003); Tipton v. Federal Bureau of Prisons, 262 F. Supp. 2d 633 (D.Md. 2003); Byrd v. Moore,** 252 F. Supp. 2d 293 **(W.D. N.C. 2003); Iacaboni v. United States,** 251 F. Supp. 2d 1015 (D.Mass. 2003); **Howard v. Ashcroft,** 248 F. Supp.2d 518 (M.D.La., 2003); **Culter v. United States, 241 F. Supp.2d 19 (D.D.C. 2003).** See also, **United States v. Serpa,** 251 F. Supp. **2d 988 (D. Mass. 2003)** (granting downward departure to defendant who pled guilty before but was sentenced after the new BOP policy was adopted on the basis that the new policy violated the ex post facto clause of the constitution); **Godbout v. United States,** No. Civ. A. 03-10264 2003 WL 22495751 (D. Mass. 2003) (vacating sentence imposed before new BOP policy was adopted because the sentence imposed by the court had been "transformed in its implementation [under the new BOP policy] to a different sentence"). But see, **Smith v. United States,** 277 F. **Supp. 2d 100 (D.D.C. 2003)** (rejecting due process claim based on change in BOP policy); **Benton v. Ashcroft, 273 F. Supp.2d 1139 (S.D. Cal. 2003)** (holding that BOP's new policy was not unlawful); **United States v. Pena,** No. 00-CR-1706-1 2003 WL 21197024 (W.D.N.Y. May 16, 2003) (rejecting defendant's motion for resentencing based on change in BOP policy).

-9-

Further, in a spate of recent cases from the District of New York, the District Judges there, in ruling in favor of the inmate on the issue of CCC placement for a period in excess of the last 10% of the sentence, have concluded that §3624(c) cannot be considered in isolation, but must ne construed with §3621(b). See **Cato v. Menifee,** No. 03-CV-5797 (S.D.N.Y. November 20, 2003) (Chin, D. J.); **Cioffoelti v. Federal Bureau of Prisons,** No. 03-CV-3220 (E.D.N.Y. November 6, 2003) (Glasser, I. J.); **Greenfield v. Menifee,** No. 03-CV-8205 (S.D.N.Y. October 30, 2003) (Wood, K.J.).

Although there are no published Circuit Court of Appeals decisions addressing the challenge to the new BOP policy, there are two Circuits which have vacated lower court decisions as becoming moot while on appeal. See **Ashkenazi v. United States,** 346 F3d 191 (D.C.Cir. 2003); **Bugarin-Juarez v. Weiss,** 76 Fed. Appx. 773 (9th Cir. 2003).[5]

Based upon the above recited arguments, and the legal authority presented there is no basis for granting the Defendant's Motion to Dismiss.

---

[5]    The Defendant's in their Memorandum on Page 7 cited **Goldings v. Winn, et. al.,** 03-CV-40161-WGY (D. Mass. October 23, 2003) as authority for their position in the instant case. The decision by Judge Young in **Goldings** is a one and one-half page Memorandum and Order which is unpublished which cites no supporting authority on the issue raised in the instant case. The only authority recited in **Goldings** are the **Kennedy v. Winn,** and **Rothberg v. Winn,** decisions which are themselves unpublished opinions. The **Goldings** case is presently on appeal to the First Circuit awaiting the filing of the Government's brief on January 30, 2004 and awaiting an expedited disposition as requested by Appellant **Goldings.** The authority relied upon by appellant in **Goldings** is similarly relied upon by the Plaintiff in the instant case.

B.    THE DEPARTMENT OF JUSTICE'S INTERPRETATION OF THE BOP'S
      DESIGNATION AUTHORITY AND THE CHANGE IN POLICY WAS PROM-
      ULGATED IN VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT.

The Bureau of Prisons imposed a new prohibition on the amount of time

for which CCC placement was to be accorded to inmates without having pro-

vided public notice that it intended to promulgate this rule and without

providing the opportunity for interested persons to participate in such

rule making violated the Administrative Procedures Act ("APA").  That Act

requires that the agency provide such prior notice and opportunity to comm-

ent on such proposed rule changes.  See 5 USC §553(b)-(d).  See also, **New

York State Electric & Gas Corp., v. Saranac Power Partners, L.P., 267 F3d

128, 131 (2d Cir. 2001).**

When an agency fails to publish a legislative rule as required by the

APA, an action based on that rule may be declared unenforceable and auth-

orize injunctive relief in such proceedings.  See **Zhang v. Slattery, 55 F3d

732, 744-47, 748-49 (2d Cir. 1995).**  The Bureau of Prisons failure to publish

and accept comment on its December 2002, abandonment of its longstanding

Program Statements and the policy of 6 months CCC placement for service of

a sentence requires some action by this Court.  The relief sought by the

Plaintiff is within this Court's jurisdiction and authority.

1.    THE APA APPLIES TO RULES PROMULGATED BY THE BOP.

"[T]he APA applies to all federal agencies unless explicitly prohibited

by statute."  **Harris v. Mutual of Omaha Cos., 992 F2d 706, 712 (7th Cir. 1993).**

While 18 USC §3525 does exempt BOP "determination[s], decision[s] or order[s]

-11-

from 5 USC §§ 554, 555 and 701-706 of the APA, these limits are no way

implicated here, where the Plaintiff has invoked the notice-and-comment

protections of §553.  See **Martin v. Gerlinski**, **133 F3d 1076, 1079 (8th**

**Cir. 1998)**.  (§3625 does not preclude application of APA to BOP rule

making); **Lasora v. Spears,** **2 F. Supp. 2d 550, 565 fn.5 (S.D.N.Y. 1998)**

(same).  The legislative history of the Sentencing Reform Act speaks dir-

ectly to this question: "The phrase 'determination, decision or order' is

intended to mean adjudication of specific cases as opposed to promulgation

of generally applicable regulations."  S.Rep. 98-225, 98th Cong. 1st Sess.

at p. 149 (1983).  Thus, the "APA continues to apply to [the] regulation-

making authority of the Bureau of Prisons."  Id. 149 fn. 363 (citing

**Ramer v. Saxbe**, **552 F2d 695 (D.C. Cir. 1975))**.

2.    **THE DEFENDANT'S RELIANCE UPON THE APA EXCEPTION FOR INTERPRETIVE**
      **RULES IS NOT APPLICABLE IN THE INSTANT CASE.**

The Defendant attempts to portray the new BOP policy as "interpretive"

not legislative or substantive.  The APA exempts from its notice and comment

requirement "interpretive rules, general statements of policy, or rules of

agency organization, procedure or practice."  5 USC §553(b)(A).  The new

BOP rule, however, is "substantive" ("or legislative") in nature and there-

fore does not fall within this exemption.  See generally, **Sweet v. Sheehan,**

**235 F3d 80, 91 (2d Cir. 2000)** (distinguishing legislative from interpretive

rules).

First, the BOP rule does not qualify as "interpretive." A rule is

substantive and not interpretive if it "change[s] existing law, policy

or practice." **Zhang v. Slattery, supra., at p. 745 fn. 8** (source of

quotation and authorities omitted). See also, **Shalala v. Guernsey**

**Memorial Hospital, 514 US 87, 99-100 (1995).** (exception for interpretive

rule would not apply if agency 'adopted new position for failing to comply

with notice and comment procedure). **Wiggins v. Wise, 951 F. Supp. 614,**

**619-20 (S.D.W.Va. 1996).** (BOP rule which changed eligibility for early

release program and imposed new restrictions was legislative, not in-

terpretive, even though change turned on new "interpretation" of statutory

term). In addition, a rule is substantive and not interpretive if it does

more than "simply state what the administrative agency thinks a statute means"

and "reminds affected parties of existing duties"--that is, if it actually

"implement[s] the statute" and "has the force and effect of law." **Chen Zhou**

**Chai, v. Carroll, 48 F3d 1331, 1340-41 (4th Cir. 1995).**

By the BOP's own admission, the new rule makes a change in the practice

with respect to CCC placement. Compare, **Clarry v. United States, 85 F3d 1041,**

**1049 (3d Cir. 1996).** Further the DAG opinion and BOP policy change does more

than simply state what a statute means; it actually implements that statute.

Second, the BOP rule is not a general statement of policy. "A rule

is a general statement of policy if it does not establish a binding norm

and leaves agency officials free to exercise their discretion." **Chen Zhou**

**Chai, supra., 48 F3d at p. 1341.** See also, **Lincoln v. Vigil, 508 US 182**

**(1993)** (general statements of policy are "statements issued by an agency

-13-

to advise the public prospectively of the manner in which the agency

proposes to exercise a discretionary power"). The BOP Rule here is the

exact opposite. It imposes a _per se_ rule prohibiting direct CCC place-

ment and limits the amount of time a prisoner can be placed in the half-

way house to 10% of his sentence. The rule leaves the agency no room to

exercise discretion in individual cases and prohibits the exercise of

discretion that was not only formerly afforded, but which in fact was

exercised by the Defendant Warden at Camp Devens. [6]

Finally, the authority upon which the Defendant relied upon in arguing

that the rule was "interpretive" rather than "legislative" or "substantive"

was misplaced and did in fact avoid discussion of the substantial impact

upon the public. The Defendant's reliance upon **Warder v. Shalala,** 149 F3d

73 (1st Cir. 1998) is misplaced in that the case relies upon the proposition

that a rule is exempt from notice and comment as an interpretive rule if it

does not "effect a substantive change in the regulations." **Warder,** 149 F3d

at p. 80. As Plaintiff has already argued there has been a substantive

change and the failure to follow the APA rule making requirements invalidates

the rule enunciated by the DAG in the December 2002 opinion.

_____/

(6)    Even if the BOP's statement that the new rule is one of "procedure," it is
not a rule of "agency organization, procedure or practice." Such rules concern
"the manner in which...parties present themselves or their viewpoints to the
agency." **RSM Inc. v. Buckles,** 254 F3d 61, 68-69 (4th Cir. 2001). They do not
"alter the rights or interests of the parties." **Id.** The BOP rule has nothing
to do with how parties present themselves to the agency and most assuredly it
in fact altered the rights and interests of inmates at all BOP institutions,
and based upon the facts pled in the Complaint, effected the Plaintiff in a
very significant way.

C.    THE NEW BOP POLICY VIOLATES THE EX POST FACTO CLAUSE

The new rule implemented by the BOP is invalid because it violates
the Ex Post Facto Clause of the Constitution.  (Art. I §9 cl. 3).  It has
been held that "to fall within the ex post facto prohibition, a law must be
retrospective--that is, 'it must apply to events occurring before its enact-
ment'--and it 'must disadvantage the offender affected by it.'"  **Lynce v.**
**Mathis,** 519 US 433, 441 (1997) citing **Weaver v. Graham,** 450 US 24, 29 (1981).
Even if the new rule was a valid interpretation of the statutes involved, the
BOP would still be required to apply it prospectively.  In stead, the BOP
chose to apply it retrospectively, electing to deny CCC placement to inmates
for any period over the last 10% of their sentence when the practice previously
had been to the contrary.

In the instant case it is incorrect to say that the new rule "has not
increased the punishment the Plaintiff will receive for the crime he committed,
but has only changed the **place** where he will serve his sentence of imprisonment.
In **Weaver,** there was a detrimental change in the method of "good time" calculat-
ions which was rejected by the Supreme Court as violating ex post facto authority.
450 US at p. 32.

In addition to substantive rules, new procedural provisions may violate
the Ex Post Facto Clause if it "create[s] a significant risk of prolonging
[the defendant's] incarceration."  **Garner v. Jones,** 529 US 224, 251 (2000).
This is exactly what has occured in the instant case.  Further, the Supreme
Court in **Carmell v. Texas,** 529 US 513 (2000) found that a changed rule of evi-
dence, which eliminated the need for corroboration of a witness's testimony,
violated ex post facto principles.

-15-

Consistent with the above recited case precedent, the denial of CCC placement, even in the factual context described in the Plaintiff's Complaint constitutes punishment that is more severe than that previously imposed for purposes of the Ex Post facto Clause. Most importantly, the legislative or regulatory removal of a significant opportunity to enjoy a favorable exercise of discretion in a decision affecting the length and conditions of incarceration violates the Ex Post Facto Clause. **Lindsey v. Washington, 301 US 397 (1937).**

Th ex post facto prohibition is applicable not only to new legislation but also to new administrative rules adopted by an agency pursuant to delegated authority. See, e.g., **Garner, supra.** Congress delegated the authority to promulgate rules for the management of federal prison facilities to the Attorney General, (18 USC §4041(b)(1)), who in turn delegated that authority to the BOP. 28 C.F.R. §0.96(o). An administrative rule that is merely interpretive in nature serves as a guide, or allows for flexible application, is not subject to ex post facto analysis. **Knox v. Lanham, 895 F. Supp. 750, 756 (D.Md. 1995),** aff'd **76 F3d 377 (4th Cir. 1996)** (table). However, where the BOP applies its new rules to all inmates and denies to them designation to a CCC for a period in excess of the last 10% of their sentence when such designation was either committed to, or otherwise was previously based on existing policy prohibits the exercise of discretion and is therefore not interpretive, and has inflexible application, such rule fails to pass constitutional muster under the ex post facto clause.

-16-

Under the facts of the instant case, the new policy implemented pursuant to the DOJ's December 2002 directive, is a rule that is equivalent to new legislation for purposes of ex post facto analysis. In support of the proposition, the Plaintiff relies upon **Love v. Fitzharris, 460 F2d 382, 383-85 (9th Cir. 1972)** vacated as moot, **409 US 1100 (1973)**. In **Love,** the California Department of Corrections interpreted conflicting statutes to allow the defendant to be eligible for parole in 3 years and 4 months. Subsequently, the Attorney General issued a legal opinion reinterpreting the conflicting statutes to require that the defendant serve at least 5 years before being eligible for parole. Recognizing the issue to be "whether [the change] brought about, not by legislative action, but by administrative fiat, was within the ex post facto prohibition," the Court in **Love** distinguished a prior 8th Circuit case where the new rule was supported by court precedent, and noted that "here the Department has changed its interpretation itself," and that "[t]he distinction is crucial." **Love, 460 F2d at p. 385.** [7]

Thus, "a new administrative interpretation which subjects the prisoner already sentenced to a more severe punishment has the same effect as a new statute lengthening his present term...and...is prohibited by the Constitution." **Id.** This case presents a similar circumstance as existed in **Love.** [8]

---

(7)  Even though **Love** was vacated as moot, presumably because more than 5 years had passed, it was cited with approval by the Supreme Court in **Warden v. Marrero, 427 US 653, 656 (1974),** and the reasoning of the 9th Circuit can be considered by this Court in deciding whether there has been a violation of the ex post facto clause.

(8)  It can certainly be argued that limiting CCC placement imposes a more severe sentence since the conditions and restrictions on an inmate at a half-way house are less onerous than those imposed in prison, even those at a Camp facility.

For all of the reasons recited above, the BOP's adopting and app-
lication of the December 2002, DOJ opinion to the Plaintiff in the in-
stant case violates the Ex Post Facto Clause of the Constitution.

**D.     THE NEW BOP POLICY VIOLATES DUE PROCESS.**

The defendants in their Brief rely upon **Sandin v. Conner,** 515 US 472
**(1995)** as authority to suggest that CCC placement and the prior reliance
upon obtaining such placement for a period of time in excess of the last
10% of his sentence was **not** a "liberty interest" which was protected by
the due process clause of the Constitution.  This position which is art-
iculated by the defendants is an incorrect statement and analysis of the
law.  The Plaintiff contends that the requirement under **Sandin** is "to
assess the nature of the interest at stake and the nature of the deprivat-
ion."  See **Asquith v. Volunteers of America**, 1 F. Supp. 2d 405, 415 (D.N.J.
**1998).** [9]

_____/

(9)    The defendants reliance upon **Sandin** because it overlooks the holding
in that case and fails to recognize the vitality of other Supreme Court pre-
cedent dealing with prisoners rights.  Beginning with **Morrissey v. Brewer,**
**408 US 471 (1972)**  and **Meachum v. Fanno, 427 US 215 (1976)** the Court held
that the liberty of a parolee "includes many of the core values of unqual-
ified liberty and its termination inflicts a 'grievous loss' on the parolee
and often on others." 408 Us at p. 482.  **Morrissey** was followed by **Wolff v.
McDonnell, 418 US 539 (1974)** which involved good time credits and the Court
held that this was a liberty interest of "real substance" and was therefore
protected by due process.  In **Meachum,** the Court held that an inmate had to
identify the source for entitlement of the liberty interest at stake. 427
US at p. 226-28.  Moreover, the arguments presented by the Defendants in
reliance upon **Sandin** fails to consider the most recent statement by the
Supreme Court on this issue as enunciated in **Young v. Harper,** 520 US 143
**(1997)** which held that an inmate enrolled in Oklahoma's pre-parole pro-
gram had a protected "liberty interest entitling him to due process before
he could be removed from the program. 520 US at p. 148.  This is certainly
similar to the CCC placement program.  See **Anderson v. Recore, 317 F3d 194,
201 (2d Cir. 2003).**

The failure of the Defendants to "assess" this consideration of CCC placement as a "liberty interest" is best expressed in the analysis by Judge Paul Friedman in **Williams v. Moore,** 899 F. Supp. 711 (D.D.C. 1995) which involved work furlough programs and where he examined the application of **Sandin** and stated:

> "[W]ork release, like good time credits protected in **Wolff v. McDonnell,**...provides substantial benefits such as expanded freedom, earning capacity, training and preparation for community reentry that relate not only to terms of confinement itself but to life outside the prison.  **Sandin,** by contrast, focused on the day-to-day characteristics of life **inside** the prison.  Since the Court in **Sandin** explicitly instructs courts to examine the nature of the deprivation rather than the language of the regulation, it could be argued that work release, unlike administrative confinement, represents a liberty interest of 'real substance' that creates a cognizable claim under the Due Process Clause." **899 F. Supp. at p. 713.**  (Emphasis added).

Thus, upon an analysis of the authority presented by the Plaintiff, it cannot be said that the right to a certain amount of CCC placement falls outside the categorization of a "liberty interest" as expressed in **Sandin.** The authority upon which the Defendants relied is misleading based upon the facts and application of the law to each of those cases.[10]

Based upon the authority and the reasons stated above, the denial of 6 months CCC placement to the Plaintiff as alleged in the complaint filed in the instant case violates due process.

---

[10]    In **United States v. Restpro,** 999 F2d 640 (2d Cir. 1993) the case involved an alien and his placement into a half-way house which was prohibited by statute, thus making the argument for such placement inapplicable.  While reliance upon **Asquith v. Volunteers of America, supra,** was appropriate to the extent it supports the BOP's authority as to CCC placement, it fails when the rationale enunciated in **Young v. Harper,** is taken into account.  In the final analysis a "liberty interest" is at stake and the case authority submitted by the Plaintiff must be considered.

**CONCLUSION**

Based upon all of the above recited reasons and the legal authority presented, the Plaintiff asks that this Court deny the Motion to Dismiss and grant the relief requested in his original Complaint.


DATED:  FEBRUARY ___, 2004                    RESPECTFULLY SUBMITTED,


                                          _____
                                          NICOLA MESSERE
                                          55094-066 UNIT I (CAMP)
                                          FEDERAL MEDICAL CENTER, DEVENS
                                          P.O. BOX 879
                                          AYER, MA. 01432


**CERTIFICATE OF SERVICE**

I NICOLA MESSERE, hereby certify that on the ___ day of February, 2004 I placed a copy of the Plaintiff's Answer to Defendant's Motion to Dismiss along with the Memorandum in Support in the mail box located at the Federal Medical Center, Camp Devens in Ayer, Massachusetts, in an envelope sent first-class mail with postage pre-paid and addressed to:  JEREMY M. STERNBERG. Assistant U.S. Attorney District of Massachusetts 1 Courthouse Way Suite 9200 Boston, Massachusetts 02210.


DATED:  FEBRUARY ___, 2004                    RESPECTFULLY SUBMITTED,


                                          _____
                                          NICOLA MESSERE
                                          55094-066 UNIT I (CAMP)
                                          FEDERAL MEDICAL CENTER, DEVENS
                                          P.O. BOX 879
                                          AYER, MA. 01432


-20-